<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

|  |  |  |
|---|---|---|
| Jerome Brooks, | : | |
| | : | |
| Petitioner, | : | Civil No. 13-2545(SRC) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| Charles Warren, | : | |
| | : | |
| Respondent. | : | |

**CHESLER**, District Judge:

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by Petitioner Jerome Brooks ("Petitioner"), an inmate confined in New Jersey State Prison, Trenton, New Jersey. (Pet., ECF No. 1.) Petitioner was convicted and sentenced after a jury trial in the New Jersey Superior Court, Bergen County for first-degree knowing and purposeful murder and two counts of felony murder on the basis of robbery and kidnapping. (Pet., ECF No. 1 at 1.) On October 22, 2009, the Appellate Division affirmed Petitioner's conviction and sentence. <u>State v. Brooks</u>, 2009 WL 3430018 (N.J. Super. Ct. App. Div. Oct. 22, 2009) ("<u>Brooks I</u>"). The New Jersey Supreme Court denied certification. <u>State v. Brooks</u>, 988 A.2d 1178 (N.J. 2010). Petitioner subsequently filed a petition for post-conviction

1

relief, which was also denied. (Pet., ECF No. 1 at 2, ¶11). The Appellate Division affirmed and the Supreme Court denied certification. State v. Brooks, 2012 WL 2369326 (N.J. Super. Ct. App. Div. June 22, 2012)("Brooks II"), certif. denied, 59 A.3d 603 (N.J. 2013). This matter is now before the Court for resolution of the habeas petition.

   I.   BACKGROUND

   The factual background, as summarized by the New Jersey Superior Court Appellate Division on Petitioner's direct appeal, Brooks I, 2009 WL 3430018, is as follows. Brooks was convicted for the murder of Roberto Arenas, a small-time narcotics dealer, on the basis of a confession that Brooks provided to Detective Mark Bendul of the Bergen County Prosecutor's Office ("BCPO"). Although Arenas was murdered on November 21, 1983, the case remained "cold" until Bendul reviewed the file in 2004 and came across the names of Brooks and an individual named Albert Bolt. Locating Brooks in the Passaic County Jail, serving time on an unrelated matter, Bendul arranged a meeting with the Petitioner on March 16, 2015. Brooks accompanied Bendul to BCPO's Paramus office, where Brooks ultimately confessed to the murder.

   Bendul, the only witness to testify at the pretrial hearing on Brooks's motion to suppress his confession, described what transpired as follows. Bendul broached the subject by telling Brooks that he had information connecting Brooks, Albert Bolt, and

2

a third person named Ronald Wimbush to a 1983 murder in Fair Lawn. Defendant waived his <u>Miranda</u> rights and agreed to speak. Defendant executed a <u>Miranda</u> rights form after hearing the rights read aloud, acknowledging his understanding of each right, and writing "yes" together with his initials next to each right. Brooks then "verbally agreed" to speak with the officers without an attorney.

Initially, Brooks denied being in Fair Lawn on the relevant day because he was incarcerated in 1983. When Bendul established that Brooks was not in jail around the time of the murder, the conversation continued. Bendul told Brooks that an investigation "clearly" revealed his involvement, but assuaged Brooks that he was not considered to be the "mastermind" of the plot, which was directed by Albert Bolt. Brooks affirmed that it was not his idea, then broke down and cried. At first, Brooks denied shooting the victim, indicating instead that Albert Bolt shot Roberto Arenas in the back of the head. Brooks eventually confessed to firing one of four shots, then admitted that he shot Arenas "two or three more times[.]"

At this point, Brooks asked Bendul about his Passaic County charges, for which he had been arrested in November 2004. Bendul informed Brooks that "those charges are independent," but his "level of cooperation, truthfulness and honesty would be made known . . . to the assistant prosecutor investigating the case." Brooks proceeded to recount the events on the day of the murder. Brooks

3

told Bendul that he and Wimbush "worked for Albert Bolt as drug runners [in] marijuana[.]" On the day of the murder, Brooks was "hanging out in the area" with Wimbush when Bolt and Arenas drove up and told the men to get in the car because "they had something to take care of[.]" After picking up Brooks and Arenas, the four men drove to an apartment in Paterson. Bolt and Arenas went inside in order to, Brooks believed, pick up cocaine from Arenas. When the men returned to the car, Bolt told Wimbush to drive to the eventual location of the shooting and made Arenas sit in the back. Raising a gun to Arenas's head, Bolt told Arenas that he would not pay for the drugs.

Upon arriving at their destination, Bolt ordered Arenas to get out of the car and instructed Brooks to follow. After walking away from the vehicle, Bolt forced Arenas to the ground and handed Brooks a gun. Bolt proceeded to tie up Arenas then told Brooks to shoot. Brooks obeyed, shooting Areans multiple times in the back of the head. The men drove away, cleaned the car, and threw away the gun.

At the end of the interview, Brooks agreed to provide a stenographic statement with the information he had just disclosed and acknowledged the accuracy of the statement. The acknowledgement was, unbeknownst to Brooks, videotaped. Brooks initialed each page, signed his name following a statement that the transcript was "true and accurate," and affirmed that he was

4

signing the statement "freely and voluntarily." Because Brooks is a Jamaican citizen, Bendul offered to contact the Jamaican embassy. Brooks declined and signed the following statement on a consular rights form: "I don't want the police to contact the Jamaican Consulate about my arrest." Brooks was arrested based on his stenographic statement.

Leading up to the trial, Brooks filed a motion to suppress the confession. Bendul provided the only testimony, and the trial judge found him to be a "trustworthy, truthful witness," concluding that Brooks "freely" and "voluntarily" waived his right to an attorney, and never subsequently requested an attorney or requested to have the interrogation stop. The trial judge denied Petitioner's motion.

Although Brooks did not testify at the pretrial hearing, he testified on his own behalf at trial, where he repudiated his confession and recounted a different version of events. Brooks testified that he refused Bolt's order to shoot Arenas. Brooks and Bolt proceeded to argue, at which point Bolt reached for the gun in Petitioner's hand. The weapon accidentally discharged. The bullet hit Arenas behind the right ear, causing a non-fatal wound. Brooks walked back to the car and heard additional shots. Brooks emphasizes that he consistently described standing on Arenas's right while Bolt stood on his left, and that evidence from the medical examiner confirmed that the first shot was on the right

and not fatal. The three subsequent shots were on the left side of Arenas's head.

In explaining his prior confession, Brooks testified that Bendul ignored his request for counsel and that Brooks only admitted to the crimes because "Bendul promised he would be charged with manslaughter and would receive a sentence concurrent with his sentence on the Passaic County offenses." Defendant also testified that "he only admitted to shooting Arenas four times because Bendul told him the police could use his statement against Bolt and that [Petitioner] would be charged with a lesser offense." Notwithstanding his testimony, Brooks was convicted primarily on the basis of his confession.

Petitioner raises eight grounds for habeas relief:

(1) the statement taken from Petitioner was not voluntarily made and its admission into evidence deprived him of due process of law and violated his privilege against self-incrimination;

(2) Petitioner was denied a fair trial and due process of law because the trial court failed to instruct the jury on attempted murder as a lesser-included offense;

(3) the trial court's woefully inadequate instruction on accomplice liability, which was awkwardly separated from the substantive charges and not tailored to the facts of the case, together with the court's failure to give a lesser-included charge

for kidnapping, deprived Petitioner of his right to due process and a fair trial;

(4) the prosecutor's trial tactics grossly exceeded the bounds of a fair trial;

(5) Petitioner's statement to the police was wrongfully admitted at trial. Petitioner invoked his right to counsel at the time of questioning but the interrogation continued, thus the statement was unlawfully obtained;[1]

(6)[2] Petitioner's appellate counsel was ineffective in failing to raise the Bankston issue which was raised at trial. Testimony was admitted which violated the hearsay rules and Petitioner's Sixth Amendment right to confront witnesses;

---

[1] In his Reply, Petitioner conceded that Ground Five is procedurally barred, and he would instead rely on Ground Seven in asserting his challenge to admission of his confession, but nevertheless proceeded to argue the claim. (Reply, ECF No. 13 at 10.) "The [independent and adequate state ground] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). On appeal of the denial of Petitioner's PCR petition, the Appellative Division found this claim procedurally barred because Petitioner knew of the claim at trial and chose not to raise it on direct appeal. Brooks II, 2012 WL 2369326 at *5-6. Thus, Ground Five will be denied, and Petitioner's discussion of the merits of the claim in his Reply will be considered, to the extent appropriate, in the context of Ground Seven of his habeas petition.

[2] In the Petition, this is labeled as the second "Ground Five." The subsequent grounds for relief are relabeled sequentially above.

(7) trial counsel's failure to move to suppress statements that were obtained because of the police's failure to scrupulously honor Defendant's right to counsel amounted to the constructive denial of counsel and separately, ineffective assistance of counsel, both in violation of the Fifth and Sixth Amendments of the United States Constitution; and

(8) Petitioner was subjected to ineffective assistance of trial and appellate counsel in violation of his Sixth Amendment rights, therefore the conviction should be reversed and a new trial ordered. (Pet., Addendum II, ECF No. 1 at 11-28.)

II.  DISCUSSION

A.  Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

B.   Analysis

1.   Ground One

Petitioner asserts that his confession was involuntary and thus not properly admitted into evidence. Petitioner claims that (1) the confession was not voluntary because his will was overborne by Detective Bendul's promise to intercede with the prosecutor to ensure that Petitioner's charges would be reduced to manslaughter and would run concurrently with his Passaic County sentence; and (2) that he requested counsel, at which time Detective Bendul should have stopped the interrogation. (Reply, ECF No. 13 at 16.)

The trial judge did not have Brooks's testimony available when he denied his pretrial motion to suppress the confession, which he admitted into evidence solely on the basis of Bendul's testimony. Bendul described that Brooks signed the Miranda waiver, that Brooks voluntarily provided and acknowledged a stenographic statement, and that Bendul informed Brooks that his "level of cooperation, truthfulness and honesty would be made known . . . to the assistant prosecutor investigating the [Passaic County] case." Brooks I, 2009 WL 3430018, at *2. The trial judge found Bendul to be "trustworthy," and on this basis concluded that Brooks "certainly signed" the Miranda rights form, and that Brooks "freely, [and] voluntarily waived his right to have an attorney present and he never requested an attorney or requested to have the interrogation stop . . . ." Id. at *5.

Determination of factual issues by a state court are presumed correct upon habeas review, and the petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In the context of voluntariness of a confession, questions like "the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings," are "subsidiary" questions, and the state court's finding of these facts, if fairly supported by the record, are entitled to the presumption of correctness. Miller v. Fenton, 474 U.S. 104, 117 (1985).

10

The state court's finding that Petitioner did not ask Bendul for counsel and voluntarily waived his <u>Miranda</u> rights is supported by the signed <u>Miranda</u> waiver form and Bendul's testimony (that contained no indication that he promised to reduce Brooks's charges to manslaughter or ensure a concurrent sentence, only that Bendul would inform the Passaic County prosecutor of Brooks's cooperation). The motion judge found Bendul's testimony to be credible. Only Petitioner's testimony at trial supports his claim that he requested counsel or that his will was overborne by false promises.

In affirming the lower Court's denial of Petitioner's post-conviction relief petition, the Appellate Division noted that to overcome the presumption in favor of the trial court's findings, Petitioner would have needed a basis to show that:

> The motion judge would have [found Brooks's] testimony credible notwithstanding defendant's signature on the <u>Miranda</u> form waiving his right to counsel. Further, the motion judge would have had to have found defendant's testimony more persuasive than that of the detective who testified that defendant never asked for counsel, was never threatened or coerced in any way, and voluntarily gave his statement after being fully advised of his <u>Miranda</u> rights.

<u>Brooks II</u>, 2012 WL 2369326, at *6. This Court agrees. Petitioner's testimony contradicting Bendul's statement, which the trial judge found credible, is insufficient to overturn the trial court's factual conclusions by clear and convincing evidence. Because the

11

factual finding that Defendant did not request counsel must stand, there was no violation of clearly established Supreme Court precedent that prohibits authorities from "reinterrogat[ing] an accused in custody if he has clearly asserted his right to counsel." Edwards v. Arizona, 451 U.S. 477, 485 (1981).

Petitioner also contends that Bendul overbore his will and obtained an involuntary confession by offering to reduce the charge to manslaughter and for the sentence to run concurrently with his outstanding charges from Passaic County. (ECF No. 13 at 15.) Here too the Court must rely on the facts before the trial court, which illustrate that Bendul advised Petitioner that the Passaic County charges were independent "but that defendant's 'level of cooperation, truthfulness and honesty would be made known . . . to the assistant prosecutor investigating the case.'" Brooks I, 2009 WL 3430018 at *2. On these facts, Bendul's conduct was not coercive. As noted by the Appellate Division, "cases holding that police conduct had overborne the will of the defendant have typically required a showing of very substantial psychological pressure on the defendant." Id. at *5 (quoting State v. Galloway, 133 N.J. 631, 656 (1993)); see also Berghuis v. Thompkins, 560 U.S. 370, 386-87 (2010) (finding no evidence that statement was coerced where police did not threaten or injure the suspect during interrogation, and interrogation was conducted in standard sized room in the middle of the afternoon for three hours).

Petitioner has not pointed to any Supreme Court case involving facts similar to those of his interrogation, as found by the trial court, where the confession was found to be involuntary because the defendant's will was overborne. Thus, Petitioner has failed to meet the standard for habeas relief, and Ground One of the Petition will be denied.

### 2.   Grounds Two and Three

In Grounds Two and Three of the Petition, Petitioner alleges that faulty jury instructions violated his right to due process and denied him a fair trial. In Ground Two, Petitioner contends that the trial court failed to instruct the jury on attempted murder as a lesser-included offense of knowing and purposeful murder. According to Petitioner, New Jersey law requires a jury to be offered a lesser-included offence charge "if there is any evidence 'that would have afforded the jury a rational basis for convicting' the defendant of the lesser-included offense." State v. Purnell, 126 N.J. 518, 531 (N.J. 1992) (quoting State v. Moore, 113 N.J. 239, 290 (1988)).

The trial judge provided the following jury charge:

> for a defendant to be guilty of murder, all
> jurors must agree that the defendant either
> knowingly or purposely caused the death or
> serious bodily injury resulting in the death
> of Roberto Arenas. . . . Defendant argues that
> the first shot was an accident and that he was
> not involved with the fatal shots. The
> defendant has neither the burden nor the duty
> to show that the homicide was by accident. The

13

> State must prove beyond a reasonable doubt
> that the death was not the result of
> defendant's accidental conduct.

Brooks I, 2009 WL 3430018, at *6. On direct appeal, the Appellate Division stated that Brook's defense theory that he accidentally shot Arenas would have been incompatible with the elements of attempted murder, which requires purposeful intent to cause a particular result. Accordingly, the Appellate Division concluded that the trial judge's omission of charges on attempted murder did not rise to the level of plain error. Id. at *7.

A petitioner does not have right to federal habeas relief based on an erroneous jury instruction unless the Supreme Court has previously held a jury instruction unconstitutional for the same reason asserted in the habeas petition. Smith v. Spisak, 558 U.S. 139, 149 (2010). Petitioner has failed to identify any Supreme Court precedent requiring jury instructions of a lesser-included offense in a non-capital case. Capital cases require special protections to ensure that a jury does not feel undue pressure to vote for a capital conviction if the only alternative is to set the defendant free with no punishment at all. Schad v. Arizona, 501 U.S. 624, 646 (1991). Accordingly, the Supreme Court has held that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [the State] is constitutionally prohibited from withdrawing that option from the jury in a capital case." Beck v. Alabama 447 U.S. 625,

14

638 (1980) (emphasis added). Other than in this context, the Supreme Court has never required juries to be given the option to convict on a lesser-included offense. See Gilmore v. Taylor, 508 U.S. 333, 342 (1993) ("instructions that contain errors of state law may not form the basis for federal habeas relief"). Therefore the Court will deny Ground Two of the Petition.

In Ground Three, Petitioner challenges the judge's failure to instruct the jurors appropriately on charges of felony murder. According to Petitioner, the judge should have told the jury that they could not find him guilty of felony murder predicated on robbery unless they could find him guilty as an accomplice to the underlying robbery, that is "unless [the jury] found that [Brooks] met the specific culpability requirement of robbery." (Reply, ECF No. 13 at 26.) Thus, Petitioner claims "the State was required to prove that petitioner had the purpose that Bolt perform the acts that constitute a theft and had a purpose also that the property be stolen." (Id.)

The fact that a jury instruction is incorrect under state law is not a basis for federal habeas relief. Estelle, 502 U.S. 62, 71-72 (1991). The pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The jury instruction must be

15

"considered in the context of the instructions as a whole and the trial record." Id.

The trial judge instructed the jury on the elements of felony murder, the elements of the predicate offense of robbery, and offered the following instruction for accomplice liability:

> Remember that this defendant can be held to be an accomplice with equal responsibility only if you find as a fact that he possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal acts. In order to convict the defendant as an accomplice to murder, robbery and/or kidnapping, you must find that the defendant had the purpose to participate in that particular crime. He must act with the purpose of promoting or facilitating the commission of the substantive crimes with which he is charged. It is not sufficient to prove only that the defendant had knowledge that another person was going to commit a murder and armed robbery. The State must prove that it was defendant's conscious object that the specific conduct charged be committed.

(Trial Transcript, ECF No. 12-17 at 59).

Thus, the jury instructions informed the jury that it could not find Petitioner guilty as an accomplice without finding that Petitioner also intended to commit murder and armed robbery. Petitioner further asserts that the evidence did not support such a finding because it was Bolt who robbed Arenas. (Reply, ECF No. 3 at 23-26.) When Petitioner raised this issue on direct appeal, the Appellate Division rejected it because Petitioner had not asserted a claim that the verdict was against the weight of the

16

evidence. Brooks I, 2009 WL 3430018 at *8. Therefore, this claim is procedurally defaulted.

In any event, the sufficiency of the evidence claim is without merit because if the jury credited Petitioner's confession, it could have found that Petitioner had the intent to rob and murder Arenas because he aided Bolt in executing his plan. See Brooks I, 2009 WL 3430018 at *3 ("Once [Bolt, Arenas, Wimbush and Brooks] were all in the car, 'that's when Albert Bolt pulled out a gun, and pointed it toward Roberto Arenas, and told him that he was not going to pay for the drugs"). Brooks remained in the car, then helped Bolt murder Arenas. It was not against the weight of the evidence for the jury to have determined that Bolt's active participation manifested intent to aid the entire plot.

Petitioner also contends that the jury should have been given the option to convict him of criminal restraint instead of kidnapping, which would have precluded a conviction for felony murder predicated upon kidnapping. (Reply, ECF No. 13 at 27.) As discussed above, there is no clearly established Supreme Court precedent requiring juries to be given the option to convict on a lesser-included offense in a non-capital case. Therefore, Ground Three of the habeas petition fails on the merits.

### 3.   Ground Four

Petitioner alleges that the Prosecutor's conduct in repeatedly calling him a liar and a drug-runner violated his right

to due process. Petitioner highlights that the prosecutor began his cross-examination by stating: "You're a liar, aren't you?" (Pet., ECF No. 1 at 20.) During summation, the prosecutor accused Brooks of being "not only . . . a murderer," but having "no credibility," and characterized Mr. Brooks's testimony as a "crock" and a "lie," claiming that Mr. Brooks thought that he would be able to "lie his way out of this[.]" (Id. at 20-21.) The prosecutor also called Brooks a "drug runner" for Bolt, which Petitioner asserts was unsupported by competent evidence. (Id. at 21.)

On direct appeal, the Appellate Division acknowledged that the prosecutor "vigorously argued his case to the jury," but ultimately found that the prosecutor's conduct was not so egregious that it deprived Petitioner of a fair trial. Brooks I, 2009 WL 3430018, at *10. Addressing Petitioner's allegations regarding the prosecutor's commentary on his credibility, the Appellate Division stated:

> Defendant put his credibility in issue when he elected to testify on his own behalf. The prosecutor was entitled to challenge the credibility of defendant's version of the facts by cross-examination. In fact, on cross-examination, defendant acknowledged that he had lied to Bendul when he first told the detective that he knew nothing about the Fair Lawn incident.

Id. As to the "drug runner" comment, the Appellate Division noted that:

18

> [D]efendant acknowledged during his direct examination that he had three prior drug-related convictions from 1981, 1984 and 1993. Moreover, defendant's statement to Bendul included his admission that he had worked for Bolt as a "drug runner."

Ultimately, the Appellate Division was satisfied that in light of the trial judge's jury charges that the jury is "the sole and exclusive judge[] of the evidence," including the "credibility of the witnesses," and that "[a]rguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence," the prosecutor's "comments and questions did not have the capacity to deprive defendant of a fair trial, either individually or collectively." Id. at *9-10.

To overturn a state court conviction based on prosecutorial misconduct, the prosecutor's remarks must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In making such a determination, a court may consider whether the prosecutor's argument misstated the evidence or implicated other specific rights of the accused such as the right to counsel and the right to remain silent. Darden v. Wainwright, 477 U.S. 168, 181-82 (1986). In determining the effect of the alleged misconduct on the trial as a whole, a court may consider whether the objectionable comments were invited by or responsive to the defense. Id. at 182.

Here, the prosecutor was entitled to challenge Petitioner's credibility because his trial testimony conflicted with his earlier statement to Detective Bendul. The prosecutor's theme that Petitioner was a liar was invited by Petitioner's defense that his confession to Bendul was not true. The prosecutor's statement that Brooks was a drug runner derived from Petitioner's confession. Furthermore, the Appellate Division properly considered the limiting jury instructions in finding that even if some of the prosecutor's statements were improper, the judge instructed the jury that comments by counsel are not evidence and the jury is the sole judge of the credibility of the witnesses. Based on the totality of the record, the Court cannot find a cognizable error for the purpose of habeas relief. Therefore, the Court will deny Ground Four of the Petition.

4.    Ground Six

In Ground Six, Petitioner alleges that his trial counsel was ineffective for failing to make a motion to suppress testimony by Detective Bendul that Bendul began his murder investigation with Petitioner and Albert Bolt as a result of reviewing the case file which contained a stenographic statement given by Ronald Wimbush. (Pet., ECF No. 1 at 26-27.) During the closing argument, the prosecutor reemphasized that Bendul "had read the [case] file" and thus "knew about Albert Bolt [and] Jerome Brooks," allegedly implying that Wimbush's statement implicated Brooks. (Id. at 26.)

20

Petitioner claims that this testimony should have been excluded under State v. Bankston, 63 N.J. 263 (1973), holding that "the Confrontation Clause and the hearsay rule are violated when, at trial, a police officer conveys, directly or by inference, information from a non-testifying declarant to incriminate the defendant in the crime charged." State v. Branch, 182 N.J. 338, 350 (2005) (citing Bankston, 63 N.J. at 268-69). Accordingly, "[w]hen the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." Bankston, 63 N.J. at 271.

Petitioner raised this issue in his post-conviction proceeding in state court. On appeal of the denial of his PCR petition, the Appellate Division found no error in admitting Bendul's testimony. The Appellate Division reasoned that police officers are permitted to explain the reasons they apprehended a suspect by stating that it was based "upon information received." Brooks II, 2012 WL 2369326, at *9 (citing Bankston, 63 N.J. at 268). "Only when the logical, or inescapable, inference to be drawn from the testimony can lead the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, should the testimony be disallowed as hearsay." Id. at *11 (citing Bankston, 63 N.J. at 271). This case, it concluded, at most, allowed an inference of "an association between defendant

21

and Wimbush based on [Bendul's] statements." Id. Even if the detective's statements were improperly admitted, the Appellate Division held that the error was harmless because the jury had independent evidence from Brooks's confession and trial testimony that Brooks "was a criminal actor." Id.

> Defendant admitted to shooting Arenas multiple times in the back of the head. Defendant claimed in his confession that he did so on orders from Bolt. At trial, defendant said he refused to shoot Arenas and that he and Bolt struggled over the gun, which then accidentally discharged. The jury had substantial evidence other than the tangential inferences to Wimbush upon which to found its verdict.

Id.

The Appellate Division carefully discussed the facts and the law concerning Petitioner's right to confront witnesses. The state court reasonably concluded that Bendul's testimony fell short of a violation of the Confrontation Clause because his statement did not create an inescapable inference that Petitioner was guilty. For example, the jury might have inferred only that Petitioner had further information that might help the investigation. Even if a violation occurred, the Court will deny Ground Six of the Petition because counsel's failure to bring a motion to suppress the statement under Bankston was harmless error. See U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment

deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

5.   Grounds Seven and Eight

In Grounds Seven and Eight, Petitioner reasserts allegations that police officers improperly proceeded with the interrogation notwithstanding his request for counsel and channels them into claims of ineffective assistance of counsel based on counsel's failure to (1) move to suppress the improperly obtained statements; (2) vigorously protect Brooks's right to remain silent and his privilege against self-incrimination; (3) present documented proof that Brooks was aware of his right to counsel; and (4) properly present the issue on appeal. (Reply, ECF No. 13 at 45; Pro Se Supp. Mem. of Law on the Merits on Behalf of Defendant-Appellant, ECF No. 12-6 at 21.)

As discussed in Ground One, above, Petitioner presented no evidence at the Miranda hearing, and thus never informed the trial court that he had asked for counsel. The Appellate Division, on appeal of the PCR court's decision, noted that "[w]hile it may be a common practice for an accused not to testify at a pretrial hearing, defendant cannot knowingly withhold evidence critical to the admission of his statement to a detective and thereafter claim the statement should not have been admitted because he had asked for counsel[.]" Brooks II, 2012 WL 2369326, at *6.

23

Without the benefit of Petitioner's statement, the trial judge accepted Bendul's testimony that Petitioner never asked for counsel. Because this acceptance is based on the judge's credibility determination and supported by the signed Miranda waiver, Petitioner's present contradictory claim does not constitute clear and convincing evidence necessary to overturn a trial court's presumptively correct factual finding. As the Appellate Division rightly stated, to succeed, Petitioner would have had to show that the motion judge would have found "this testimony credible notwithstanding defendant's signature on the Miranda form waiving his right to counsel" and that the motion judge would have found "defendant's testimony more persuasive than that of the detective who testified that defendant never asked for counsel[.]" Id. Petitioner has adduced no such evidence.

Given the absence of evidence necessary to establish that Petitioner requested counsel in light of the trial court's finding to the contrary, the Court cannot conclude that either trial or appellate counsel were ineffective for inadequately protecting Petitioner's rights or failing to suppress the confession based on Bendul's alleged failure to stop the interrogation following Petitioner's request for counsel. Therefore, the Court will deny Grounds Seven and Eight of the Petition.

24

III. CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. See Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not made a substantial showing, and this Court will not issue a certification of appealability.

IV. CONCLUSION

In the accompanying Order filed herewith, the Court will deny the habeas petition.


Dated: April 28, 2016

                                           <u>s/ Stanley R. Chesler</u>
                                          **STANLEY R. CHESLER**
                                          **UNITED STATES DISTRICT JUDGE**